CLERK'S COPY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
99 JAN 28 AM 11:28

CLERK-SANTA FE

CARLOS L. HERRERA,

Plaintiff,

vs.

No. CIV 98-1250 MV/LG

LOVELACE HEALTH SYSTEMS,
INC., a New Mexico corporation,
THE LOVELACE INSTITUTES,
INC., a New Mexico professional
corporation, and BRET L.
LAPOINTE, M.D.,

Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Remand, filed December 4, 1998 [**Doc. 17**]. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED IN PART**, as explained below.

### BACKGROUND

Plaintiff Carlos L. Herrera ("Herrera") commenced this medical malpractice claim in New Mexico State Court, Second Judicial District, on September 9, 1998. Plaintiff seeks compensation from Defendants Lovelace Health Systems, Inc. ("Lovelace Health Systems"), the Lovelace Institutes, Inc. ("Lovelace Institutes") and Dr. Bret L. LaPointe ("Dr. LaPointe") for injuries sustained by Herrera as a result of a vasectomy allegedly performed negligently by Dr. LaPointe.

Count I of the Complaint alleges medical malpractice by Dr. LaPointe and vicarious liability by Lovelace Health Systems and Lovelace Institutes. Count II asserts a claim of "corporate negligence" as a result of Lovelace Health Systems and Lovelace Institutes' alleged failure to properly oversee the treatment of their patients, to select and retain competent physicians, to oversee the physicians providing medical care, and to enforce adequate rules and policies to ensure quality medical care. Count III alleges negligence per se by Lovelace Health Systems, Lovelace Institutes and Dr. LaPointe for asserted violations of a New Mexico statute requiring certain standards of care in medical facilities. Finally, Count IV alleges intentional infliction of emotional distress by all Defendants.

On October 7, 1998, Lovelace Health Systems and Dr. LaPointe filed a Notice of Removal. Lovelace Institutes did not join in the Removal nor was its failure to join explained anywhere in the Notice. The Notice of Removal alleges that Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq*. ("ERISA") and therefore properly heard only in federal court. Plaintiff now moves for remand to the state court, arguing that the claims asserted do not arise under ERISA and, therefore, are not properly before the Court.

## ANALYSIS

Defendants removed this case to federal court based on the premise that Plaintiff's claims, though pled strictly in terms of state law causes of action, in fact raise claims under ERISA which are completely preempted, and only judicable in federal court. Because the medical services in this case were provided pursuant to the benefits plan of a health maintenance organization (HMO),

2

ERISA is implicated. Plaintiff now moves for remand, asserting that his claims are strictly state law causes of action for medical malpractice and negligence by the HMO which are not completely preempted. Plaintiff also raises a procedural defect in the removal in that the Notice fails to account for the absence of Lovelace Institutes in the motion to remove. Finally, Plaintiff requests attorneys fees and costs. Because the Court concludes that removal was improvident, requiring remand, the Court will not address Plaintiff's argument that the Notice was technically defective. The Court however does not deem it appropriate to award attorneys fees and costs, as explained below.

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Catepillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). When removal is premised on federal question jurisdiction, the analysis begins with the "'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* "Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Id.* at 393.

The Supreme Court has however recognized a narrow exception to the "well pleaded complaint rule," that being the doctrine of "complete preemption." *Id.* As the court explained,

> [o]n occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well- pleaded complaint rule. Once an area of state law has been completely pre-empted, any claim purportedly based on that

3

> pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* (citing *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 65 (1987) and *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983), quotation marks omitted). To date, the Supreme Court has held that the "complete preemption" doctrine applies in only two situations: (1) to claims arising under the National Labor Management Relations Act; and (2) to claims arising under section 502 of ERISA. *Metropolitan Life*, 481 U.S. at 65.

In *Metropolitan Life, supra*, 481 U.S. 58, the Supreme Court held that state law claims which fall under the ERISA civil enforcement provisions of 29 U.S.C. § 1132(a)(1)(B) are completely preempted. *Id.* at 66. Section 1132(a)(1)(B) provides that a plan beneficiary may bring suit in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." In concluding that claims which may properly be characterized as falling under § 1132(a)(1)(B) are completely preempted, the court cautioned that this exception to the well-pleaded complaint rule is extremely narrow. *Id.* Specifically, the court held that a case may not be removed to federal court on the basis of preemption under § 1144 of ERISA which provides that state law claims which "relate to" matters governed by ERISA are preempted. *Id.* at 64; *Franchise Tax Board*, 463 U.S. at 23-27; *Jass v. Prudential Health Care Plan*, 88 F.3d 1482, 1487 (7th Cir.1996); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3rd Cir. 1995); *Warner v. Ford Motor Co.*, 46 F.3d 531, 534 (6th Cir. 1995); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272-73 (2d Cir.1994). Rather, §1144 preemption merely states a federal defense, which does not provide a basis for removal.

4

*Metropolitan Life*, 481 U.S. at 65-66; *Jass*, 88 F.3d at 1487; *Dukes*, 57 F.3d at 355; *Warner* 46 F.3d at 534; *Lupo*, 28 F.3d at 272-73.

Thus, in the context of ERISA, the doctrine of complete pre-emption is limited to claims which may properly be characterized as §1132(a)(1)(B) actions by the plaintiff "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Metropolitan Life*, 481 U.S. at 65-66; *Warner* 46 F.3d at 534. Accordingly, in *Metropolitan Life, supra*, 481 U.S. 58, the court held that a state common law claim asserting improper processing of a claim for benefits was removable to federal court because the cause of action was for the recovery of benefits due under the plan. *Id.*

More to the point, several courts have held that a state law claim which asserts that a medical procedure was improperly denied by an HMO is completely preempted under §1132(a)(1)(B) and therefore removable to federal court. *Jass*, 88 F.3d at 1487 (claim for negligence arising out of failure to approve physical therapy preempted); *Kuhl v. Lincoln Nat'l Health Plan, Inc.*, 999 F.2d 298, 303 (8th Cir., 1993) (medical malpractice claim for delay in approval of heart surgery held preempted); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993), cert. denied, 511 U.S. 1052 (1994) (wrongful death suit alleging failure to approve bone marrow transplant preempted); *Corcoran v. United Healthcare, Inc.*, 965 F.2d 1321, 1331 (5th Cir.), cert. denied, 506 U.S. 1033 (1992) (wrongful death suit following death of fetus after HMO approved only 10 hours per day of nursing care for pregnant woman despite doctor recommendation for 24 hour care held preempted). Because such a claim asserts that the plaintiff was improperly denied a benefit under the plan– a necessary medical procedure which the plaintiff was entitled to have the plan pay for– the suit seeks

"to recover benefits due" or "to enforce . . . rights under the terms of the plan" regardless of what causes of action are actually pled in the complaint.

On the other hand, several courts, including the Tenth Circuit Court of Appeals, have held that actions for medical malpractice and vicarious liability are not preempted under §1132(a)(1)(B). *Pacificare of Oklahoma, Inc. v. Burrage*, 59 F.3d 151, 154 (10th Cir.1995); *Coyne & Delany v. Selman*, 98 F.3d 1457 (4th Cir. 1996); *Lupo*, 28 F.3d at 272-73; *Jass*, 88 F.3d at 1487; *Dukes*, 57 F.3d at 356; *Rice v. Panchal*, 65 F.3d 637, 645 (7th Cir.1995); *Moreno v. Health Partners Health Plan*, 4 F.Supp. 888, 890-91 (D.Ariz. 1998); *Roessert v. Health Net*, 929 F.Supp. 343, 350-51 (N.D.Cal. 1996). In one of the first appellate decisions to address the question, the Tenth Circuit in *Pacificare, supra*, 59 F.3d 151, held that medical malpractice and vicarious liability claims were not preempted because these issues could be "resolved without reference to the plan." *Id.* at 154. Instead, the court continued, the issue in the case

> requires evidence of what transpired between the patient and physician and an assessment of whether in providing admittedly covered treatment or giving professional advice the physician possessed and utilized the knowledge, skill and care usually had and exercised by physicians in his community or medical specialty.

*Id.* Accordingly, the court concluded that a medical malpractice and vicarious liability action "does not involve a claim for benefits, a claim to enforce rights under the benefit plan or a claim challenging administration of the benefit plan." *Id.*[1]

---

[1] The court did observe that a loss of consortium claim might be preempted if based on fraudulent administration of the plan. *Pacificare*, 59 F.3d at 154. The court then concluded that in the case before the claim was derivative of the medical malpractice action and therefore, not preempted. *Id.*

Similarly, the Third Circuit Court of Appeals concluded that medical malpractice and vicarious liability actions,

> merely attack the quality of the benefits [plaintiffs] received: The plaintiffs here simply do not claim that the plans erroneously withheld benefits due. Nor do they ask the state courts to enforce their rights under the terms of their respective plans or to clarify their rights to future benefits. As a result, the plaintiffs' claims fall outside of the scope of § 502(a)(1)(B) and these cases must be remanded to the state courts from which they were removed.

*Dukes*, 57 F.3d at 356. The court continued, "[w]e are confident that a claim about the quality of a benefit received is not a claim under [§1132(a)(1)(B)] to 'recover benefits due . . . under the terms of the plan.'" *Id.* at 357. The ERISA statute, the court concluded, was only concerned with whether benefits due under the plan were actually provided, not the quality of the benefits received. *Id.* "Quality control of benefits, such as the health care benefits provided here, is a field traditionally occupied by state regulation . . . ." *Id.* In reaching this conclusion, the *Dukes* court noted that there is a crucial distinction between the twin HMO roles of approving of medical benefits and actually arranging for the provision of medical services in determining whether a claim is completely preempted pursuant to §1132(a)(1)(B). *Id.* at 360.

Likewise, in *Jass, supra*, 88 F.3d 1482, the Seventh Circuit concluded that the crucial question was whether the case could be resolved without interpreting the benefits contract. *Id.* at 1489. Thus, the court held that the claims for medical malpractice and vicarious liability were not preempted while a claim that the HMO improperly denied physical therapy was preempted. *Id.* at 1488-90. Similarly, in *Lupo, supra*, 28 F.3d 269, the Second Circuit held that claims for medical malpractice, vicarious liability and intentional infliction of emotional distress were not preempted.

7

*Id.* at 272. "On their face, none of these claims bears any significant resemblance to those described in §1132(a)(1)(B)," observed the *Lupo* court. *Id.*

Moreover, the Second Circuit in *Lupo* also held that claims of negligent hiring and negligent supervision of the physicians by the HMO were also not preempted by §1132(a)(1)(B). *Id.* This ruling was later followed by the district court in *Fritts v. Khoury*, 933 F.Supp. 668, 670-72 (E.D. Mich. 1996). Quoting from the Seventh Circuit opinion of *Rice v. Panchal, supra,* 65 F.3d 637, the *Fritts* court observed that,

> given the purely factual nature of these inquiries, the plaintiff's claim does not involve the interpretation of the ERISA plan, and cannot be recharacterized as a suit within the scope of § [§1132(a)(1)(B)]. . . . Rather, this is a case in which beyond the simple need to refer to the Plan, the Plan is irrelevant to the dispute.

*Id.* at 672 (quoting *Rice*, 65 F.3d at 645). Numerous districts courts have reached the same conclusion, both before and after the *Lupo* decision. *Lucero v. Nat'l Health Laboratories, Inc.*, No. Civ. 95-708 JC/LCS (Mem. Op., October 11, 1995) (D.N.M. unreported decision; claim for negligent selection, retention and supervision of physician not preempted); *Moscovitch v. Danbury Hospital*, 25 F.Supp.2d 74, 80 (D.Conn. 1998) (same); *Santitoro v. Evans*, 935 F.Supp. 733, 735-36 (E.D.N.C.1996) (same); *Kearney v. U.S. Healthcare, Inc.*, 859 F.Supp. 182, 188 & n. 8 (E.D.Pa.1994) (same); *Elsesser v. Hospital of the Philadelphia College of Osteopathic Medicine*, 802 F.Supp. 1286, 1290 (E.D.Pa.1992) (same); *Pell v. Shmokler*, 1997 WL 83743 * 4 (E.D. Penn. 1997) (unreported case; same). Indeed, the Court has been unable to locate and the parties have not brought to its attention any case reaching the opposite conclusion.

As should be apparent from the above discussion, Plaintiff is correct that his claims for medical malpractice, corporate negligence, negligence per se and intentional infliction of emotional

distress are not completely preempted pursuant to §1132(a)(1)(B) of ERISA. *Pacificare*, 59 F.3d at 154; *Lupo,* 28 F.3d at 272. As in the cases discussed above, "[i]n the present case, Defendants are accused of being responsible for the design and delivery of [medical services] which injured the Plaintiff. Who paid for the procedure is inconsequential." *Moreno*, 4 F.Supp. at 890-91. The issues in the case address solely the quality of medical services provided by Defendants' physician. It has nothing to do with the administration of the HMO plan nor the approval or withholding of benefits under the plan. "Rather, this is a case in which beyond the simple need to refer to the Plan, the Plan is irrelevant to the dispute." *Fritts*, 933 F.Supp. at 672. Thus, the claims raised by Plaintiff may not be properly recharacterized as "to recover benefits due" or "to enforce . . . rights under the terms of the plan." Accordingly, the claims are not completely preempted and removal was improvident. *Metropolitan Life,* 481 U.S. at 64; *Pacificare*, 59 F.3d at 154; *Lupo,* 28 F.3d at 272. The action will therefore be remanded to the New Mexico State Court, Second Judicial District.

Finally, the Court does not deem it appropriate to award attorneys fees and costs as a result of Defendants' improvident removal. Although the Court concludes that the law squarely favors Plaintiff's position, the Tenth Circuit has not ruled on all of the issues presented in this case. Further, although the Court concludes that there is a solid consensus among the various districts on the issues presented here, this consensus is only a recent development. Most of the cases cited above were decided in the last two years. Thus, the Court concludes that Defendants' attempt at removal was not so utterly without foundation that the award of costs and attorneys fees would be appropriate.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand **[Doc. 17]** is hereby **GRANTED IN PART**. This action is hereby **REMANDED TO THE NEW MEXICO STATE DISTRICT COURT, SECOND JUDICIAL DISTRICT**. All other pending motions in this case **[Docs. 10, 25 and any other motions]** are hereby **DENIED** as moot. Plaintiff's request for attorneys fees and costs is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Valerie Chang

Attorney for Defendants:
    James Bromberg